IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3323-FL

| JOHN WESLEY LOWE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | ORDER |
|  | ) |  |
| THE UNITED STATES OF AMERICA, THE FEDERAL BUREAU OF PRISONS, CORRECTIONAL OFFICER BALDWIN, LIEUTENANT CRADDOCK, LIEUTENANT DAWSON, CORRECTIONAL OFFICER DELOSSANTOS, CORRECTIONAL OFFICER LASSISTER, AGENT LOWERY, CORRECTIONAL OFFICER MCHENRY, CORRECTIONAL OFFICER STATEN, LIEUTENANT WRIGHT, and UNIT MANAGER WILLIS, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

The matter comes before the court on defendants' second motion to dismiss, or in the alternative for summary judgment,[1] (DE 49), pursuant to Federal Rule of Civil Procedure 56(a), to which plaintiff responded. Also before the court is defendant Lieutenant Dawson's motion to dismiss (DE 69) for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 4(e), to which plaintiff did not respond. For the following reasons, the court grants defendants' motions.

---

[1] Because defendants attached documents that are outside of the pleadings, defendants' motion will be construed, in part, as a motion for summary judgment.

## STATEMENT OF THE CASE

For ease of reference, the statement of the facts as set forth in the court's August 21, 2015, order is as follows:

> On December 30, 2013, plaintiff, a federal inmate, filed this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 2672, et seq. Plaintiff named the United States, the Federal Bureau of Prisons ("BOP"), Correctional Officer Baldwin ("Baldwin"), Lieutenant Craddock ("Craddock"), Lieutenant Dawson ("Dawson"), Correctional Officer [De Los Santos] ("[De Los Santos]"), Correctional Officer Lassiter ("Lassiter"), Agent Lowery ("Lowery"), Correctional Officer McHenry ("McHenry"), Correctional Officer Staten ("Staten"), Lieutenant Wright ("Wright"), and Unit Manager Willis ("Willis") as defendants. Plaintiff alleged the following Bivens claims in his complaint: (1) his prison conditions violated the Eighth Amendment to the United States Constitution; (2) defendants used excessive force in violation of the Eighth Amendment; (3) bystander defendants failed to protect him from assault from other correctional officers in violation of the Eighth Amendment; (4) defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment; (5) defendants interfered with the investigation of his excessive force claim by denying him access to the BOP's administrative remedy procedure; and (6) defendants engaged in retaliatory conduct. As for plaintiff's FTCA claim, plaintiff alleged that the United States breached its legal duty to properly train, monitor, and control its employees which resulted in the alleged assault and failure to provide medical care.
>
> On July 11, 2014, the court conducted an initial review of plaintiff's action pursuant to 28 U.S.C. § 1915(e)(2)(b). As part of its order, the court ruled that the United States was the only proper party for plaintiff's FTCA action, and dismissed plaintiff's FTCA action against the remaining defendants. The court also dismissed the BOP as a defendant and allowed plaintiff to proceed with his Bivens action against the remaining defendants.
>
> On November 7, 2014, defendants filed a motion to dismiss, or in the alternative, for summary judgment, arguing that plaintiff's Bivens action, in part, is time barred. Alternatively, defendants assert that plaintiff's Bivens claims should be dismissed because plaintiff failed

> to exhaust his administrative remedies prior to filing this action and because plaintiff, in part, failed to state a claim upon which relief may be granted. Defendant the United States moved to dismiss plaintiff's FTCA action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The motion was fully briefed. Plaintiff additionally filed pleadings captioned "plaintiff's motion for an order denying, alternatively, deferring defendants' motion/memorandum to dismiss, alternative for summary judgment" and "plaintiff's motion for relief pursuant to Fed. R. Civ. P. 56(d)." Defendants did not respond to plaintiff's motions.

((DE 75), pp. 1-3.)

On August 21, 2015, the court granted in part and denied in part plaintiff's motion for a continuance pursuant to Rule 56(d). The court granted the motion as to plaintiff's Bivens claims, but denied it as to plaintiff's FTCA claims. Because the court granted plaintiff a continuance as to plaintiff's Bivens claim, the court denied as moot defendants' motion to dismiss, or in the alterative, motion for summary judgment as to plaintiff's Bivens claim. The court denied the remainder of defendant's motion to dismiss or for summary judgment. The court then entered a case management order setting both discovery and dispositive motion deadlines.

Defendants thereafter filed an unopposed motion for an extension of time to complete discovery, motion for a protective order, *ex parte* motion to seal and for *in camera* review, and motion to extend the case management order deadlines. Plaintiff then filed a motion for an extension of the court's case management order deadlines. On March 16, 2016, the court granted defendants' motion for an *in camera* review and motion to seal an incident report and an investigative report attached to defendants' motion to seal. The court also granted defendants' motion for a protective order, which permitted plaintiff to review the two reports, but precluded plaintiff from possessing, copying, maintaining, or distributing the documents. Finally, the court

granted the parties' motions for extension of time and extended the discovery and dispositive motions deadlines.

On June 16, 2016, defendants Baldwin, Craddock, De Los Santos, Lassister, Lowery, McHenry, Staten, Wright, and the United States filed the instant motion to dismiss plaintiff's FTCA claims for lack of subject matter jurisdiction. Defendants also move for summary judgment, arguing *inter alia*, that plaintiff's Bivens claims should be dismissed pursuant to the FTCA's judgment bar or for failure to exhaust administrative remedies. In support of their motion, defendants submit declarations and supporting documentation from defendants Stock, Lowery, Willis, as well as Cornelia Coll.[2] Defendants also include the following in their appendix: plaintiff's response to defendants' first request for admissions; plaintiff's response to defendants' first set of interrogatories; the United States' response to plaintiff's "request to produce;" the United States' response to plaintiff's request for production of documents; and a BOP Program Statement. These defendants additionally filed a motion for leave to file excess pages, which the court granted.

On June 17, 2016, plaintiff filed a motion for default judgment as to defendant Dawson and a motion for a jury trial. Plaintiff then filed a motion for permission to file an out of time response. On October 14, 2016, the court denied without prejudice plaintiff's motion for entry of default, denied as moot plaintiff's motion to make a jury demand, and granted plaintiff's motion to file an out of time response.

On November 3, 2016, defendant Dawson filed the instant motion to dismiss for lack of personal jurisdiction based on insufficient service of process pursuant to Federal Rules of Civil

---

[2] Corneal Coll, who is not a party to this action, is employed by the BOP as a Paralegal Specialist. (Coll Decl. ¶ 1).

Procedure 12(b)(2), 12(b)(5), and 4(e). In support of his motion, Dawson submits declarations from Shaw Hargett, Phillip Clark, and Contina Jefferson.[3] Although plaintiff was granted an extension of time to respond to Dawson's motion to dismiss, plaintiff did not file a response.

## STATEMENT OF FACTS

The facts viewed in the light most favorable to plaintiff may be summarized as follows. This cause of action arose while plaintiff was incarcerated at the Federal Medical Center in Butner, North Carolina ("Butner"). (Verified Compl. p. 9). On October 31, 2010, plaintiff was charged with a prohibited act for his use of intoxicants following two positive breathalyzer tests. (Willis Decl. ¶ 6 and Attach. 1). As a result, plaintiff was placed in Butner's special housing unit ("SHU") pending the investigation of the disciplinary charge. (Id. and Attach. 2). A disciplinary hearing officer subsequently conducted a hearing on plaintiff's charge and found him guilty of the prohibited act of "making, possessing, or using intoxicants." (Id. Attach. 3). As a result of his disciplinary conviction, plaintiff was sanctioned with the loss of 27 days good conduct time, 30 days of suspended disciplinary segregation, and loss of commissary privileges for a period of one year. (Id.)

On December 10, 2010, plaintiff signed a written statement stating that defendants De Los Santos and McHenry physically assaulted him in the SHU at Butner on November 1, 2010. (Lowery Decl. ¶ 5 and Attach. 1). Following plaintiff's allegations of assault, he was transferred back to Butner's SHU pending the investigation into his allegations. (Lowery Decl. ¶ 14). On July 13, 2011, plaintiff filed an administrative remedy request regarding the alleged assault by staff and issues

---

[3] Shaw Hargett is employed by the BOP as a Human Resources Manager. (Shaw Decl. ¶ 2). Phillip Clark is employed by the BOP as a Supervisory Correctional Systems Specialist. (Clark Decl. ¶ 2). Contina Jefferson is employed by the BOP as a Correctional Systems Officer. (Jefferson Decl. ¶ 2).

surrounding the investigation into the alleged assault (grievance number 650183-F1). (Coll Decl. ¶ 7 and Attach. 3).

Plaintiff presented grievance number 650183-F1 to defendant Baldwin. (DE 32, p. 9). Shortly thereafter, defendants Willis, Dawson and Lowery met with plaintiff on July 21, 2011, and ordered plaintiff to withdraw his grievance or plaintiff would not be released from the SHU and medical staff would not treat his prostate cancer. (Compl. p. 14; Lowery Decl. Attach. 10, p. 3).[4] On the same date, plaintiff executed an affidavit recanting his allegations regarding the November 1, 2010, assault and stating that he made such allegations out of frustration for having received a disciplinary charge for using intoxicants. (Lowery Decl. ¶ 9 and Attach. 8). On July 25, 2011, plaintiff was transferred from the SHU to the general population. (Id. ¶ 14). On August 4, 2011, plaintiff withdrew grievance number 650183-F1, and did not file any further administrative remedy requests regarding the instant claims. (Coll Decl. ¶ 7 and Attach. 3). Plaintiff states that defendant Baldwin refused to provide him with the proper forms to file a grievance. (DE 32, p. 8, 14).

On March 19, 2012, plaintiff was transferred from Butner to the United States Penitentiary in Atlanta, Georgia. (DE 32, p. 5 and Ex. 6; Coll Decl. ¶ 4). On October 24, 2012, plaintiff filed an administrative tort claim regarding the instant allegations with the BOP's Mid Atlantic Regional Office using the following address: 10010 Junction Dr.; Suite 100-N; Annapolis JCT, Maryland 20701. (Compl. p. 6 and Attach. p. 3-4). Plaintiff obtained such address from the inmate law library at the United States Penitentiary in Atlanta. (Id.) After hearing no response from the Mid Atlantic Regional Office for over six months, plaintiff sent a letter to the address where he filed his October

---

[4] Defendants Lowery and Willis dispute that they threatened plaintiff or coerced plaintiff into withdrawing his grievance. (Lowery Decl. ¶ 13; Willis Decl. ¶¶ 20, 21).

24, 2012, administrative tort claim, and the letter was returned to plaintiff as "Not Deliverable As Addressed." (Id. Attach. pp. 3, 4, 5). The BOP has no record of receiving plaintiff's October 24, 2012, administrative tort claim, and the administrative tort claim was not returned to plaintiff as undeliverable. (Coll Decl. ¶ 8 and Attach. 3).

Plaintiff then obtained a different address for the Mid-Atlantic Regional Office and re-submitted his administrative tort claim to the correct address for the Mid-Atlantic Regional Office, which is 302 Sentinel Drive; Suite 200; Annapolis Junction, Maryland 20701. (Id.) This has been the address for the Mid-Atlantic Regional Office since August 2007. (Coll Decl. ¶ 9). The Mid-Atlantic Regional Office received plaintiff's administrative tort claim on June 2, 2013. (Id. ¶ 8 and Attach. 3). The BOP then reviewed plaintiff's administrative tort claim and denied it on June 24, 2013, because it was not filed within the statutory time period. (Id. and Attach. 3, p. 6). Plaintiff was released from incarceration on February 5, 2016. www.bop.gov.

## DISCUSSION

A.  Standard of Review

Defendants moved to dismiss pursuant to Rule 12(b)(1) and for summary judgment pursuant to Rule 56(a). Beginning with the standard governing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either assert the complaint fails to state facts upon which subject matter jurisdiction may be based or attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams, 697 F.2d at 1219.

The latter type of attack is used when a court's limited jurisdiction precludes hearing the case brought. Id. Since the court's power to hear the case is at issue in a Rule 12(b)(1) motion, the court is free to weigh the evidence to determine the existence of jurisdiction. Id. This includes exhibits outside the pleadings. Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995).

The court next sets forth the standard of review applicable to a motion for summary judgment. Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.   Analysis

1.   FTCA Claims

Plaintiff brings several negligence-based claims against the United States pursuant to the FTCA. The court first determines whether plaintiff complied with the jurisdictional requirements of the FTCA's administrative remedy procedure. The FTCA provides the exclusive remedy for common law negligence claims against federal employees acting within the scope of their employment. See 28 U.S.C. §§ 2671–2680, 1346(b)(1). The FTCA specifies:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the

negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). In addition, 28 U.S.C. § 2401(b) states:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

Here, plaintiff's October 24, 2012, attempt to file a tort claim does not comport with § 2401(b)'s presentment requirement because it was not properly presented to the BOP in that the BOP never received the filing. See 28 U.S.C.§ 2401(b); 28 C.F.R. § 14.2(a) (stating that an administrative tort claim "shall be deemed to have been presented" when it has been "received by the federal agency"). Although the BOP did receive plaintiff's June 2, 2013, tort claim, it was filed after the November 3, 2012, statute of limitation deadline. See 28 U.S.C.§ 2401(b).[5]

As a defense to the running of the statute of limitations, plaintiff asserts that he is entitled to equitable tolling. In United States v. Kwai Fun Wong, ––– U.S. ––––, 135 S.Ct. 1625, 1638 (2015), the United States Supreme Court held that the FTCA's limitations period is not a jurisdictional rule, but a claims processing one. As such, the limitations period is subject to the doctrine of equitable tolling. Id. "Plaintiffs are entitled to equitable tolling only if they show that

---

[5] To the extent plaintiff's tort claim alleges a denial of medical care from October 31, 2010 through November 3, 2010, his claim accrued on November 3, 2010. See 28 U.S.C. § 2401.

9

they have pursued their rights diligently and extraordinary circumstances prevented them from filing on time." Raplee v. United States, 842 F.3d 328, 333 (4th Cir. 2016). Further, equitable tolling "is reserved for 'those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" Id. (citing Harris v. Hutchingson, 209 F.3d 325, 330 (4th Cir. 2000)).

Plaintiff's equitable tolling argument in this case is based on his contention that he timely filed an administrative tort claim on October 24, 2012, using an outdated address he obtained from the United States Penitentiary in Atlanta. (Compl. Attach. p. 3). Even when construing the facts in the light most favorable to plaintiff, the record reflects that plaintiff did not diligently pursue his rights. This is evident from the fact that plaintiff waited more than six months to inquire into the status of his October 24, 2012, tort claim, despite the fact that he never received an acknowledgment of his tort claim. (Id.) Federal regulations specifically provide that an inmate filing a tort claim will receive an acknowledgment letter upon the BOP's receipt of the inmate's claim. See 28 C.F.R. § 543.32. The fact that plaintiff never received an acknowledgment letter of his October 24, 2012, claim should have put him on notice that something was amiss. Had plaintiff been exercising due diligence, he would have inquired into the status of his tort claim sooner than six months after mailing it. Ignorance of the proper mailing address and/or the federal regulations governing tort claims are insufficient grounds for equitable tolling. See Unites States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004).

There, additionally, is no evidence that the BOP engaged in misconduct or intentionally interfered with plaintiff's attempts to file his October 24, 2012, tort claim. Based upon the foregoing, the court finds that there are no extraordinary circumstances presented in this case which

10

warrant equitable tolling.[6] See, Irwin v. Dept. of Veteran Affairs, 498 U.S. 89, 96 (1990) (finding that the doctrine of equitable tolling does not "extend to what is at best a garden variety claim of excusable neglect."); Raplee, 842 F.3d at 334; see, e.g., Gould v. U.S. Dept. of Health & Human Services, 905 F.2d 738, 745 (4th Cir. 1990) ("[T]here is no evidence that the government stalled the discovery process or otherwise blocked plaintiffs from obtaining information within the limitations period."). Accordingly, the action is time-barred, and this court lacks subject-matter jurisdiction over plaintiff's FTCA claims.

    2.    Bivens Claims

        a.    Judgment Bar

Defendants first argue that the FTCA's judgment-bar provision precludes any Bivens claim against them. Under the judgment-bar provision, "[t]he judgment in an action under [the FTCA] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676; see Unus v. Kane, 565 F.3d 103, 121–22 (4th Cir. 2009). "[T]he purpose of a judgment bar is to prevent the possibility of double recoveries and the cost of defending multiple suits regarding the same conduct for the government." Himmelreich v. Fed. Bureau of Prisons, 766 F.3d 576, 580 (6th Cir. 2014) (per curiam), cert. granted sub nom. Simmons v. Himmelreich, 136 S. Ct. 445 (2015). Generally, however, "[a] dismissal for lack of subject-matter jurisdiction does not trigger the § 2676 judgment bar." Id. at 579. Here, because the court dismissed plaintiff's FTCA action

---

[6] To the extent plaintiff asserts that he is entitled to equitable tolling because he was unable to timely gather the evidence necessary to file his administrative tort claim, such equitable tolling claim is belied by the record because plaintiff's purported October 24, 2012, tort claim would have been timely.

11

for lack of subject matter jurisdiction on statute of limitations grounds, the court declines to apply the judgment bar to this action.

b. Exhaustion of Administrative Remedies

Defendants next argue that they are entitled to summary judgment on plaintiff's Bivens claims because plaintiff failed to exhaust his administrative remedies for such claims prior to filing this action. Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing an action under 42 U.S.C. § 1983 concerning his confinement. Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1856 (2016) ("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."); Woodford v. Ngo, 548 U.S. 81, 83-85 (2006); see Jones v. Bock, 549 U.S. 199, 217 (2007) ("failure to exhaust is an affirmative defense under [42 U.S.C. § 1997e]"); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005). The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford, 548 U.S. at 84. Exhaustion is mandatory. Woodford, 548 U.S. at 85; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."); Anderson, 407 F.3d at 677. A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[U]nexhausted claims cannot be brought in court." Jones, 549 U.S. at 211.

The BOP provides a four-step administrative remedy procedure. The first step in the process requires an inmate to present his issue to staff in an attempt at informal resolution. See 28 C.F.R.

12

§ 542.13. If informal resolution is unsuccessful, an inmate may submit a formal written administrative remedy request to the warden using a BP-9 form. See 28 C.F.R. § 542.14. If an inmate is dissatisfied with the warden's response, he then may appeal to the BOP's regional director, using a BP-10 form, and then to the BOP's General Counsel, using a BP-11 form. See 28 C.F.R. § 542.15.

The United States Supreme Court has stated that the PLRA requires proper exhaustion. Woodford, 548 U.S. at 84. The Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. at 90. "[A] prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are." See Moore, 517 F.3d at 725 (citing Woodford, 548 U.S. at 95). Further, the administrative remedy procedure is considered available where the administrative authority has the ability to take *some* action in response to a complaint, even if it is not the requested action. Booth, 532 U.S. at 741; see Larkin v. Galloway, 266 F.3d 718, 723 (7th Cir. 2001) (finding that inmate must exhaust prison remedies if the administrative body (1) was empowered to consider the complaint and (2) could take some action in response to it).

Here, the record reflects that plaintiff filed grievance number 650183-F1 on July 13, 2011. (Cox Decl. ¶ 7 and Attach. 2). Plaintiff subsequently withdrew grievance number 650183-F1 on August 4, 2011, and did not re-submit his grievance or file any other grievance pertaining to the facts of this case. (Id.) As a defense to his failure to exhaust, plaintiff asserts that defendants Dawson, Lowery, Willis, and Baldwin coerced him into withdrawing grievance number 650183-F1 by threatening him with a prolonged investigation and denial of medical care. (Verified Compl. p. 15). Plaintiff also alleges that Butner staff refused to provide him with the proper form for filing a

13

grievance. (DE 32, p. 8). Plaintiff's alleged fear of retaliation from Butner staff and allegations that Butner staff refused to provide him with grievance forms are sufficient to excuse exhaustion while plaintiff was incarcerated at Butner. See Ross, 136 S.Ct. at 1860 (finding that an inmate's failure to exhaust may be excused when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.").

The court's exhaustion inquiry, however, is not complete. The record reflects that plaintiff was transferred from Butner to the United States Penitentiary in Atlanta, Georgia on March 19, 2012. (DE 32, p. 5 and Ex. 6; Coll Decl. ¶ 4). Plaintiff provides no explanation for his failure to file a grievance for his claims while incarcerated in Atlanta, where he no longer was subject to the actions of Butner staff. To the extent any grievance filed in Atlanta may have been untimely, the BOP's administrative remedy procedure provides that the filing deadlines "may be extended" where "the inmate demonstrates a valid reason for delay." 28 C.F.R. § 542.15(a); see, e.g., Zander v. Lappin, No. 5:08-CT-3117-FL, 2012 WL 3138012, at *5 (E.D.N.C. Aug. 1, 2012) (finding the plaintiff's contention that his grievance would have been untimely if he would have waited for his BP-9 response was insufficient to establish equitable tolling), aff'd, 509 F. App. 203 (4th Cir. 2013). Accordingly, plaintiff has not demonstrated that he was prevented from filing a grievance while incarcerated in Atlanta. Based upon the foregoing, plaintiff failed to satisfy § 1997e(a)'s exhaustion requirement, and his Bivens claims are DISMISSED without prejudice to allow plaintiff the opportunity to exhaust his administrative remedies.

3. Service on Defendant Dawson

Defendant Dawson moves to dismiss plaintiff's complaint for insufficient service of process. Proper service of process (or waiver of service under Rule 4(d)) is necessary for the court to exercise

personal jurisdiction over a defendant. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). Under Rule 4(m), if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court must dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time, unless the plaintiff can show good cause. Fed. R. Civ. P. 4(m). Rule 4(e)(1) permits a plaintiff to serve individual defendants "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

The North Carolina Rules of Civil Procedure permit service "[b]y mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(c). Under Rule 4(j)(1)(c), a plaintiff may mail the documents to a defendant's place of employment. See id. When a defendant challenges whether a plaintiff effected valid service by certified mail, a plaintiff may prove valid service by filing an affidavit (1) averring that a copy of the summons and complaint was sent by registered or certified mail, return receipt requested, and that addressee received the copy and (2) attaching the return receipt or other satisfactory evidence of delivery. See N.C. Gen. Stat. § 1-75.10(a)(4); Granville Med. Ctr. v. Tipton, 160 N.C. App. 484, 490 (2003); see also N.C. Gen. Stat. § 1A-1, Rule 4(j2)(2). Under North Carolina law, showing "merely that the registered or certified mail [was] delivered to the address of the party to be served and that a person of reasonable age and discretion receive[d] the mail and sign[ed] the return receipt on behalf of the addressee . . . . raises a rebuttable presumption of valid service." See Granville, 160 N.C. App. at 490–91. This presumption arises even if a person other than the addressee signed the attached return

15

receipt. See, e.g., N.C. Gen. Stat. § 1A-1, Rule 4(j2)(2); In re Williams, 149 N.C. App. 951, 959 (2002).

A defendant may rebut the presumption of valid service with "affidavits of more than one person showing unequivocally that proper service was not made upon the person of the defendant." Grimsley v. Nelson, 342 N.C. 542, 545 (1996). The affidavits must show that (1) the person who signed the return receipt was not the defendant's authorized agent and (2) the delivery failed to notify defendant of the lawsuit. See, e.g., id. at 545; Dougherty Equip. Co. v. M.C. Precast Concrete, Inc., 212 N.C. App. 509, 514 (2011).

The United States Marshal filed a return of service indicating service on defendant Dawson at Butner through certified mail, return receipt requested. (See DE 11, p. 17). Although the attached return receipt shows that the delivery was accepted by Dawson, the United States Attorney presented a declaration from Jefferson stating that Jefferson signed the return receipt card for Dawson, but that Jefferson was not authorized to act as Dawson's agent for the purpose of service of process. (Jefferson Decl. ¶¶ 7-8). The United States Attorney additionally submitted an affidavit from Hargett stating that there was no individual by the name of Dawson employed by Butner during the relevant time period. (Hargett Decl. ¶ 5). Based upon the foregoing, plaintiff failed to effectuate proper service of process on Dawson. Plaintiff, additionally, has not shown good cause for his failure to obtain service pursuant to Rule 4(m) on Dawson. Because plaintiff failed to obtain proper service on Dawson in accordance with Rule 4, Dawson's motion to dismiss for failure to obtain proper service pursuant to Rule 12(b)(5) is GRANTED. Plaintiff's action against Dawson is DISMISSED without prejudice for failure to obtain service in accordance with Rule 4(m).

## CONCLUSION

For the foregoing reasons, the court rules as follows:

(1) Defendants' motion to dismiss plaintiff's FTCA claims (DE 49) is GRANTED;

(2) Defendants' motion for summary judgment as to plaintiff's <u>Bivens</u> claims (DE 49) is GRANTED, and plaintiff's <u>Bivens</u> claims are DISMISSED without prejudice to permit plaintiff the opportunity to re-file his complaint after fully exhausting his administrative remedies;

(3) Defendant Dawson's motion to dismiss (DE 69) for failure to obtain service is GRANTED, and plaintiff's claims against defendant Dawson are DISMISSED without prejudice.

SO ORDERED, this 13th day of March, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge